1      IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS

2

3   EQUAL EMPLOYMENT OPPORTUNITY          )
    COMMISSION,                           )
4                                         )
                    Plaintiff             )
5                                         )   CA No. 17-11860-PBS
              -VS-                         )   Pages 1 - 22
6                                         )
    ATLANTIC CAPES FISHERIES, INC.        )
7   and BJ's SERVICE CO., INC.,           )
                                          )
8                   Defendants            )

9

10                    **MOTION HEARING**

11        BEFORE THE HONORABLE PATTI B. SARIS
           UNITED STATES CHIEF DISTRICT JUDGE

12

13

14

15

16                              United States District Court
                                1 Courthouse Way, Courtroom 19
17                              Boston, Massachusetts  02210
                                January 9, 2018, 3:12 p.m.

18

19

20

21

22

                        LEE A. MARZILLI
23                   OFFICIAL COURT REPORTER
                  United States District Court
24                1 Courthouse Way, Room 7200
                     Boston, MA  02210
25                     (617)345-6787

1    A P P E A R A N C E S:

2        SARA E. SMOLIK, ESQ., Equal Employment Opportunity
     Commission, John F. Kennedy Federal Building, Government
3    Center, Room 475, Boston, Massachusetts, 02203-0506,
     for the Plaintiff.

4
         ADELA P. SANTOS, ESQ., Equal Employment Opportunity
5    Commission, 33 Whitehall Street, 5th Floor, New York,
     New York, 10004-2112, for the Plaintiff.

6
         JESSICA SCHACHTER JEWELL, ESQ., Nixon Peabody, LLC,
7    One Citizens Plaza, Providence, Rhode Island, 02903,
     for the Defendant, Atlantic Capes Fisheries, Inc.

8
         MATTHEW C. MASTROMAURO, ESQ., McDonough, Hacking &
9    Lavoie, LLC, 27 Congress Street, Salem, Massachusetts,
     01970, for the Defendant, BJ's Service Co., Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE CLERK:  Court calls Civil Action 17-11860,

3     EEOC v. Atlantic Capes Fisheries.  Could counsel please

4     identify themselves.

5          MS. SMOLIK:  Good afternoon, your Honor.  Sara

6     Smolik for the Equal Employment Opportunity Commission, and

7     with me is my colleague, Adela Santos.

8          MS. SANTOS:  Good afternoon.

9          THE COURT:  Good afternoon.

10         MS. JEWELL:  Good afternoon, your Honor.  Jessica

11    Jewell on behalf of Atlantic Capes Fisheries.

12         MR. MASTROMAURO:  And good afternoon, your Honor.

13    Matthew Mastromauro on behalf of BJ's Service Company, Inc.

14         THE COURT:  All right, thank you.  Well, we're

15    here.  I've had an opportunity to read your papers, and let

16    me just start off with the moving party here.  You know, I

17    can't -- I think the way the Supreme Court assumed this

18    would happen is that I would have some record of what

19    happened, and I have nothing.  So what did happen?  You get

20    this letter -- I want to ask each of you -- you get this

21    letter.  It says, "We're willing to conciliate."  What did

22    you do?

23         MS. SMOLIK:  Your Honor, I know you're not asking

24    me because I'm not the moving party, but I do want to just

25    caution that the Supreme Court has held that the substance

1   of what happens --

2          THE COURT:  I understand that.  I've read the case.

3   I've read Justice Kagan's beautifully written opinion.  I've

4   read it all.  But she surmised that this might be based on an

5   affidavit.

6          MS. SMOLIK:  Yes, yes, and in that case there was a

7   motion for summary judgment from the Commission to strike the

8   affirmative defense.

9          THE COURT:  Can I just say, I just go to the moving

10  party first.

11         MS. SMOLIK:  Yes, your Honor.

12         THE COURT:  Okay, so you're going to have plenty of

13  time, I promise.

14         MS. SMOLIK:  Just I'm afraid of anyone revealing

15  confidential information.

16         THE COURT:  I didn't ask the substance of what

17  happened.  What happened?  Did you call them up and say, "We

18  want to conciliate"?  What happened?  You get a notice from the

19  EEOC saying, "We're willing to talk to you and conciliate."  In

20  fact you have given me nothing in the record as to what

21  actually happened.

22         MS. JEWELL:  Yes, your Honor.  After the EEOC sent the

23  reasonable cause determination to Atlantic Capes Fisheries,

24  there was correspondence, and --

25         THE COURT:  Correspondence means what, emails?

1          MS. JEWELL:  Letters.

2          THE COURT:  Letters.  Trying to conciliate?

3          MS. JEWELL:  Yes, your Honor.

4          THE COURT:  So it happened.  I'm just -- so you said

5     you would like to conciliate in X, Y, Z way, and then what

6     happened?

7          MS. JEWELL:  Your Honor, our position in these papers

8     is that my client did not receive sufficient information to

9     meet the conciliation --

10          THE COURT:  Well, did you offer to meet with them and

11     deal with the -- is it Santos?  I forget his name.

12          MS. JEWELL:  Mr. Santos.

13          THE COURT:  Santos and -- I mean, I don't need the

14     substance of it, but did you offer to try to remedy the

15     situation?

16          MS. JEWELL:  There were communications back and forth

17     seeking to obtain additional information.

18          THE COURT:  But you didn't offer to conciliate it?

19          MS. JEWELL:  No, we did, I believe, and as my sister

20     stated, I am hesitant to go into the details of the

21     conciliation process.

22          THE COURT:  Well, then I can't resolve this.  I mean,

23     under that Supreme Court opinion, if there were efforts to

24     conciliate, I'm not supposed to probe whether they were good

25     faith or not.  I'm not supposed to probe how fulsome they were.

1  I'm not, and, in any event, I couldn't because I have no
2  record.  I have nothing, not even what the Supreme Court
3  thought I'd have.
4      MS. JEWELL:  That's right, your Honor, and I
5  understand we're not suggesting that conciliation wasn't in
6  good faith.  We haven't gone there.
7      THE COURT:  They gave you the chance to conciliate.
8  You responded.  There was correspondence.  I don't
9  understand -- and the same would be true for BJ's?
10     MR. MASTROMAURO:  Again, your Honor, cautious of not
11 discussing what was actually, you know, talked about in the
12 various letters and meetings with the EEOC after getting the
13 determination letter, I think as the --
14     THE COURT:  How many meetings were there?
15     MR. MASTROMAURO:  We had I think at least two.
16     THE COURT:  How many did you have?  In person?
17     MR. MASTROMAURO:  Yes.
18     MS. JEWELL:  We had one in-person meeting, your Honor.
19     THE COURT:  And you have emails and letters and phone
20 calls and that sort of thing?
21     MR. MASTROMAURO:  Yes, your Honor.
22     THE COURT:  So I'm not dismissing the suit.  I
23 couldn't possibly because I have no record to do that.
24     MS. JEWELL:  I understand that, your Honor.  Our
25 position is that while there was conciliation, this started as,

1    if you want to say, either three or four individuals who filed

2    charges of discrimination; and for the very first time in the

3    reasonable cause determination, ACF learned for the first time

4    that it was essentially a class action lawsuit.

5         THE COURT:  Well, I read it.  It said "and a class."

6    It said it in the letter, a class of women.  It says that.

7         MS. JEWELL:  And I believe, under the *Mach Mining*

8    decision, there does need to be a certain level of information

9    provided to an employer.

10        THE COURT:  So this is about this guy Santos.  How

11   many people did he supervise?

12        MS. JEWELL:  Well, your Honor, the individuals who

13   have been named as charging parties were not necessarily under

14   his supervision at the time.

15        THE COURT:  Well, how many people in the plant?  Is it

16   a plant?  I don't even know.

17        MS. JEWELL:  It's a facility in Fall River, and I

18   would estimate there could be between eighty to a hundred

19   individuals.

20        THE COURT:  Women?

21        MS. JEWELL:  Not women.

22        THE COURT:  So we're talking about forty people.

23        MS. JEWELL:  Yes, your Honor.  I would add that

24   because of the nature of the staffing at this facility,

25   individuals are employed by BJ's and are assigned to --

1          THE COURT:  Sure, but the number of people who would

2     have -- maybe I'm using the wrong word -- come into contact

3     with Mr. Santos was at most forty people, women, forty women?

4          MS. JEWELL:  Your Honor, that's actually -- I would

5     disagree with that, only to say there are individuals who have

6     come to the facility and worked one shift.  They've worked for

7     a month.  They've worked for years.  And so without actually

8     diving into those records, I couldn't tell you how many

9     individuals.

10          THE COURT:  So this boils down to not a complaint that

11     there was a failure to conciliate.  It's really that you should

12     be able to know in greater detail how many women he touched or

13     harassed?

14          MS. JEWELL:  Yes.  And I would also add whether or not

15     there are any other individuals who allegedly engaged in this

16     conduct because based on the wording of the complaint, it

17     suggests that the EEOC thinks there may be; but, again, I do

18     think that's relevant to the conciliation.

19          THE COURT:  Well, did you specifically ask for the

20     names of every woman who is alleging it?

21          MS. JEWELL:  During the conciliation process, your

22     Honor?

23          THE COURT:  Yes.

24          MS. JEWELL:  I don't believe so.  I don't want to

25     speak out of turn.  I don't --

1          THE COURT:  Did you?

2          MR. MASTROMAURO:  Again, I don't want to get into the

3   discussion, but to respond to the Court, we did ask for the

4   shape of this class, the information on who's there.  And if I

5   could briefly with respect to BJ's, the allegations regarding

6   Mr. Santos, who's a BJ's referral, as to the three named

7   parties, Ms. Fuentes, Ms. Pacaja, and Ms. Rosales, are very

8   detailed; and then the EEOC, you know, as to their interactions

9   with just Mr. Santos; and then the EEOC says there's other line

10  supervisors who engaged in similar conduct with a class of

11  women.  And specifically with respect to BJ's, your Honor,

12  we're talking about kind of a commonality issue, as we've kind

13  of discussed in our --

14         THE COURT:  Well, no, that goes to the merits.  I'm

15  just talking about -- pretty much the Supreme Court knocked the

16  legs out of most efforts the earlier courts had done as long as

17  there was a conciliation process, and so I suppose -- I have

18  no -- I have no record that I could do any of this from you.  I

19  have nothing other than lawyer proffers.  So the only issue --

20  I mean, I couldn't possibly grant your motion.  The question is

21  whether I leave anything open at the end of the day, you know

22  what I mean, in terms of -- so you're basically -- did you ask

23  for the names of other transgressors?

24         MR. MASTROMAURO:  I guess if the Court is interested

25  in a record of the conciliation and that the EEOC is agreeable

1  to submitting affidavits under some sort of confidentiality

2  order just for the --

3          THE COURT:  Well, I'm not asking for the substance of

4  who the women were or who the transgressors were or what

5  exactly was the deal that was being offered.  I can't do this

6  from either of you.  I can't either bless what the EEOC did or

7  agree that your conciliation process has been unfairly negated.

8  I don't know.  I read the case.

9          MS. SMOLIK:  If I may, your Honor, I do think that

10  questions about what was asked and what information was

11  provided during conciliation are of the type that the Supreme

12  Court ruled are subject to the confidentiality provisions of

13  Title VII.  So ordinarily what this looks like, post-*Mach Mining*,

14  is that the defendant will answer the complaint and assert an

15  affirmative defense, a failure to conciliate; and EEOC will

16  move to strike that defense and attach an affidavit from the

17  office's director saying, "Determination was issued on this

18  date.  On this date a conciliation proposal was mailed.  On

19  this date the parties came to the office and we conducted a

20  conciliation conference.  On this date a proposal was sent.

21  Another proposal was sent.  We engaged in communications.  On

22  this date I determined that we would not be able to reach a

23  conciliation satisfactory."

24          THE COURT:  So this is just earlier than you usually

25  see it.  That's why I've gotten so little information.

1      MS. SMOLIK:  Yes.  And when we had the Rule 7.1

2  conference, I pointed out to defense counsel that I didn't

3  think that this was the appropriate moment to raise this issue

4  because exactly that:  The only facts that the Court has are

5  the facts in the complaint, which indicate that we satisfied

6  all conditions precedent to suit and that we engaged in

7  conciliation, and so the record the Court has indicates that

8  we've satisfied the standard that the Supreme Court set forth

9  in *Mach*.

10     THE COURT:  I agree with that, but let me just play

11  law school with you for a minute, all right?

12     MS. SMOLIK:  Of course.

13     THE COURT:  So I agree, right now this is denied.

14  But is there another transgressor other than Santos?

15     MS. SMOLIK:  I believe that the complaint indicates

16  that there are other transgressors besides Santos.  It

17  indicates that there are other managers and line supervisors

18  who have engaged in sex harassment at the plant.

19     THE COURT:  Okay.  So at some point you may well have,

20  in my view, done enough with respect to Santos.  You've named

21  the name.  You've talked about the group of people he came into

22  contact with and et cetera.  But law school-wise, did you tell

23  them who the other alleged -- how can they conciliate with

24  somebody they don't even know who it is?

25     MS. SMOLIK:  The letter of determination does identify

1  another harasser, your Honor.

2       THE COURT:  Oh, maybe I missed that.

3       MS. SMOLIK:  The letter of determination with respect

4  to ACF does identify another harasser, your Honor.

5       THE COURT:  I see.

6       MS. SMOLIK:  So although he's not identified in the

7  complaint, and it's managers.  And I guess I would also say,

8  your Honor, that this is sort of a classic negligence case

9  because ACF at the time had no policy prohibiting sex

10  harassment at all, conducted no training, right?  So --

11       THE COURT:  That's a different story.  It's hard to

12  conciliate if you don't -- so you're saying they knew of the

13  two transgressors that you're talking about?

14       MS. SMOLIK:  Yes.  There were two harassers identified

15  in the conciliation, yes -- I'm sorry -- in the letter of

16  determination.  I want to be clear.

17       THE COURT:  Okay, all right, so I may have just missed

18  that because I read the complaint, but --

19       MS. SMOLIK:  That's with respect to ACF.  With BJ's,

20  only one was identified because the other harasser was not

21  employed by BJ's jointly.  It was not a joint employment

22  relationship.

23       THE COURT:  I see, so I -- you were trying to pop in

24  there.

25       MR. MASTROMAURO:  Sorry, which raises the other

concern that was raised by BJ's with respect to this motion is,

you know, the knowledge of the hostile work environment.  I

mean, there are other alleged -- as the EEOC now states, there

are other individuals who are purely employed by ACF, and so we

haven't -- again, it's an issue of essentially commonality.

We're talking about a class harassed by different --

THE COURT:  But that's for the merits.

MR. MASTROMAURO:  But that's how it's pled as well.

THE COURT:  I'm so early into this.  So they say they

told you about the two transgressors, and they're trying to

hold the company liable, which of course they are, no big

surprise there.  So you maybe get off the hook because it's not

a joint employer situation, but you knew at least what the

claim was.  So I don't see -- well, I guess I'm just at court.

Other than the fact that people pay you to come up with the --

get them off the hook as early as possible, I don't think this

is either the right stage or even whether it's possible, if you

really did have conciliation discussions and you knew the two

transgressors' names.

MR. MASTROMAURO:  If I could, your Honor, if we're

going to go to the phase where we're responding to the

complaint, you know, raising an affirmative defense of an

improper conciliation, could the EEOC simply amend their

complaint to name these other male line supervisors?  Because

we may have other people like --

1       THE COURT:  I'll get to it when I do, but right now

2   we're talking about two transgressors and the women they

3   touched in a smallish-level plant.  It's going to be forty

4   women.  I just don't see an issue.  I just don't see it.  Now,

5   you're worried that new people will come out of the woodwork

6   and --

7       MR. MASTROMAURO:  No, it's not pled that Mr. Santos

8   was this prolific harasser.  It's pled that Mr. Santos engaged

9   in very specific harassment with respect to the three named

10  complainants, and that other unnamed line supervisors engaged

11  in harassment of other women.

12      THE COURT:  No, I think she said just one.

13      MR. MASTROMAURO:  Well, then that should be struck

14  from --

15      THE COURT:  Well, I'm not going there.  If in fact

16  some others come up, maybe they should seek to conciliate if

17  there's brand-new information about new people.  I'll cross

18  that bridge when I get to it.

19      So let's get on to the merits here for one minute.  I

20  deny the motion based on the Supreme Court case.  First of all,

21  I have no record that I could possibly grant it, and, second of

22  all, it sounds as if you did conciliate.  Based on a lawyer

23  agreement, there was conciliation here.  There may be a concern

24  about not every single woman was being identified, but it

25  wasn't such a large class that you wouldn't know how to

conciliate.

Now, can you raise it as a defense if there are new people that come up?  Sure.  New transgressors?  Sure.  But let me ask this question, which is, if you're so eager to conciliate, do you guys want to settle this?  In other words, do you want me to send you to early mediation?  The proof will be in the pudding.

MS. JEWELL:  Your Honor, I can answer that.  My client is here today.  He's interested in the outcome of these proceedings and --

THE COURT:  Because I could send you to mediation, Court-Annexed Mediation.  We'd do a magistrate judge.  We could do early before there are big expenses.  Whatever happened to Mr. Santos?  Is he still with your company?

MS. JEWELL:  He's still working at the facility.

THE COURT:  Does he deny it?  He says it didn't happen?

MS. JEWELL:  He denies it, and --

THE COURT:  All right, so it's a trial.

MS. JEWELL:  I was going to just add that there have not been any new complaints with respect to him or, frankly, anybody else.  But going back to your question, there would be interest in reopening discussions with the EEOC.  I think part of the problem is simply, my client doesn't feel like it has sufficient information to really have those discussions, but if

1   it were to get additional information, it would be amenable

2   to --

3           THE COURT:  Well, let me put it this way:  The bad

4   news is, you're here.  The good news is, you get discovery, so

5   you get all this information that you didn't get through the

6   conciliation process.  So why don't we do -- we don't have a

7   Rule 16.  I don't need a Rule 16 conference.  Let's just do

8   this.  How much time do you think you need for discovery?

9           MS. SMOLIK:  I think we can do it in six months, your

10  Honor.

11          THE COURT:  Sound good to you, both of you?

12          MR. MASTROMAURO:  No.

13          THE COURT:  Why?

14          MR. MASTROMAURO:  There could be -- we still don't

15  know the shape of this class, how many members could be in this

16  class, because there might be 200 or so individuals at the

17  facility, but it's a revolving door.  There could be people

18  coming and going.  There could be people who were working there

19  in 2014 who are now --

20          THE COURT:  You're going to find this out.

21          MR. MASTROMAURO:  I couldn't do that in six months.

22          THE COURT:  Why?  Why?  You're going to say to them,

23  "How many people have complained about sexual harassment?"

24  They may not even know themselves at this point whether there's

25  anyone else other than the three or four.  Do you know that for

1  a fact?

2       MS. SMOLIK:  Yes.  We would not have made a class

3  allegation, your Honor, if we did not believe there were

4  others.

5       THE COURT:  You believe there are more than the four,

6  three to four people who complained?

7       MS. SMOLIK:  Yes.  Yes, your Honor.

8       THE COURT:  Okay, so let's do this:  Why don't we do

9  automatic disclosure within 30 days, which means they're going

10  to have to turn over to you the names of everybody who has

11  complained, and you're going to have to turn over to them your

12  investigation into what happened with Mr. Santos and the other

13  person; you know, all the paper records that you have so far.

14  And then I want -- these women were fired?  Is that it?

15       MS. SMOLIK:  They were fired, your Honor, and then

16  reinstated.

17       THE COURT:  They're now working there?

18       MS. SMOLIK:  Yes.

19       THE COURT:  So no retaliation against the women?

20       MS. SMOLIK:  Well, there's a retaliation claim before

21  their reinstatement.  There's the period when they were not --

22       THE COURT:  Sure, or against any other names obviously

23  that you hear about.  But in the meantime, how much -- so if

24  you do automatic disclosure in 30 days, we'll do fact discovery

25  within -- you know, by the end of June, June 30 fact discovery.

1   Can you see a reason for expert discovery?

2         MS. SMOLIK:  I do not, your Honor.

3         THE COURT:  I don't either, really.

4         MS. JEWELL:  No, your Honor.

5         THE COURT:  Motions for summary judgment, which I'm

6   sure I'll hear on the joint employer issue, say August 1?

7         THE CLERK:  August 1 is a Wednesday.

8         THE COURT:  Okay.  And then we'll have a hearing on

9   summary judgment in early September.

10         THE CLERK:  How about September --

11         THE COURT:  And that gives you lots of leeway if you

12   need a little bit more time.  I don't know why you feel like

13   you need so much.  I guess I --

14         MR. MASTROMAURO:  I guess the issue is, we're not

15   talking about like a discrimination case where there's a

16   pattern or practice of not promoting, you know, female

17   employees.  We're talking about specific acts of sexual

18   harassment, so that is an individual issue.

19         THE COURT:  Right, so it should be pretty easy to come

20   up with the names of people who say they were touched or they

21   were verbally harassed.

22         MR. MASTROMAURO:  As of today, we don't know if it's

23   forty or a hundred --

24         THE COURT:  You'll find out.  That's her problem.

25   She's now in Federal Court.

1    MR. MASTROMAURO:  No, but that could be forty or a

2  hundred depositions.

3    THE COURT:  Let me put it this way:  I'm here.  I

4  never leave.  I never go anywhere.  Life is boring.  Just file

5  a motion for more time, okay?  Just ask for more time.  But

6  right now it sounds as if there's a pretty well-joined issue

7  with respect to these three women and at least one alleged

8  perpetrator.  Mr. Santos said he didn't do it.  They said he

9  did.  That's why we have jury trials, so we'll see.  And then

10  there may be, what would you ballpark it, another ten people

11  you know about, twenty people you know about?

12    MS. SMOLIK:  I can't imagine this class is larger than

13  twenty-five, your Honor.

14    THE COURT:  Okay.  So if it's twenty-five people, I

15  suppose you could do two-hour depositions and just pack them

16  in, if you wanted to, or not.  And you also have to find out,

17  at least from your point of view, whether they're your people.

18    MR. MASTROMAURO:  Yes, your Honor.  I think it could

19  have been pled in the complaint, I mean, if it's this small --

20    THE COURT:  You know, *Iqbal/Twombly* doesn't make the

21  whole complaint a Wikipedia page.  It's adequate.  And let me

22  also say, if for some reason new people are alleged -- for

23  example, a new perpetrator that we haven't heard of before --

24  you may have a good argument, they have to go back and

25  conciliate, but I would just stay it for that.  I wouldn't

1     dismiss it.  So, you know, you'll work within the confines.

2     The Supreme Court didn't totally take EEOC's position either.

3     I mean, there's --

4          MS. SMOLIK:  That's true, your Honor.

5          THE COURT:  So, you know, if you add somebody they

6     haven't heard about, conciliate it.  But the big question is,

7     when can I send this to mediation because it sounds like you're

8     really eager to resolve this, and so when can I send this to

9     someone?  Why don't I set it up.  It's now January in horrific

10    weather, and let's get you in April and May once you've had

11    some discovery and some paper to try and work it out.  Does

12    that seem like a good time frame?

13         MS. SMOLIK:  That's fine, your Honor.  The Commission

14    is always amenable to mediation.

15         THE COURT:  All right.  And you don't have a sense of

16    an ongoing problem, right?

17         MS. SMOLIK:  Well, the investigation ended I believe

18    in early 2017, so I don't have a source of information for

19    what's been going on, but we've pled that it's through the

20    present, at least, when we -- I mean, as far as we know, the

21    guy who was harassing is still employed.  That's been

22    confirmed.  The other guy is still there, as far as we know.

23         THE COURT:  But you haven't heard of any more

24    touchings or --

25         MS. SMOLIK:  We have not received any more charges,

1  your Honor.

2       THE COURT:  All right, so I don't have a sense of an

3  emergency right now.  It's not like there's an ongoing pattern

4  right now, but if there is, we could move the trial date up or

5  something like that, so --

6       Is there any chance of -- the hearing date is

7  September 14, 2018, but I'm here if there's a need for a faster

8  trial or a more urgent remedy.

9       THE CLERK:  2:30.

10      MS. SMOLIK:  Thank you.

11      THE COURT:  Has the company implemented procedures to

12  deal with sexual harassment?

13      MS. JEWELL:  Yes, your Honor.

14      THE COURT:  Like someone to talk to and --

15      MS. JEWELL:  Yes, your Honor.  And, as I stated

16  before, I know it's not part of the official record, but there

17  have not been any complaints about Mr. Santos or this other

18  individual since those charges were filed, and sort of the

19  subsequent -- there is one charge and then a follow-up charge

20  was filed, but it's been quiet since then, your Honor.

21      THE COURT:  I hope so.  I hope it stays that way, and

22  hopefully you've put into place some procedures going forward.

23      Have you looked at those at all?

24      MS. SMOLIK:  We looked at the procedures that we saw

25  prior to the end of the investigation.  My memory, and I hope

1   that I'm not speaking out of turn, is that at the time the

2   charges were filed, there was no procedure in place.  The

3   company subsequently put procedures in place.  The Commission

4   did not think that they were adequate, but --

5        THE COURT:  It at least was some step in the right

6   direction.

7        MS. SMOLIK:  I mean, a policy is better than no

8   policy, I would say.

9        THE COURT:  All right.  Well, in any event, I think

10   happy new year to you all.  I think we've resolved this.  We've

11   moved on.  I don't think I need a Rule 16 conference.  We've

12   got mediation scheduled.  I'm happy to move that up, too, if

13   your clients want you to, and there's also nothing that

14   prevents you from -- the whole issue with the joint employers

15   is a difficult one, but usually it needs a record.

16        MS. SMOLIK:  Thank you, your Honor.

17        MS. JEWELL:  Thank you, your Honor.

18        MR. MASTROMAURO:  Thank you, your Honor.

19        THE CLERK:  All rise.

20        (Adjourned, 3:36 p.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3
UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON                )
5

6

7            I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 22 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Civil Action No. 17-11860-PBS,

11  Equal Employment Opportunity Commission v. Atlantic Capes

12  Fisheries, Inc., et al, and thereafter by me reduced to

13  typewriting and is a true and accurate record of the

14  proceedings.

15           Dated this 2nd day of February, 2018.

16

17

18

19

20           /s/ Lee A. Marzilli

21           _____
             LEE A. MARZILLI, CRR
22           OFFICIAL COURT REPORTER

23

24

25