IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORUTNITY COMMISSION,<br>    Plaintiff<br><br>-and-<br><br>MARGARITA FUENTES, MIRNA PACAJA, and ESDEYRA ROSALES,<br>    Plaintiffs-in-Intervention<br><br>v.<br><br>ATLANTIC CAPES FISHERIES, INC. and BJ'S SERVICE CO., INC.,<br>    Defendants | Civil Action No. 1:17-cv-11860-PBS<br><br>JURY TRIAL DEMANDED<br><br>(Motion to Intervene Granted on May 29, 2018) |

## COMPLAINT IN INTERVENTION

NATURE OF THE ACTION

This is an action alleging unlawful sex discrimination and retaliation under Title VII and Chapter 151B of the Mass. General Laws. The claim is brought by Margarita Fuentes, Mirna Pacaja, and Esdeyra Rosales against joint employers Atlantic Capes Fisheries, Inc. ("ACF") and BJ's Service Co., Inc. ("BJ's"), and the Plaintiffs allege that the Defendants subjected them to sexual harassment. In addition, after Pacaja and Rosales complained about sex discrimination, ACF retaliated by subjecting them to continued harassment and terminating their employment. Defendant BJ's also retaliated against Pacaja and Rosales by refusing to refer them for suitable, subsequent employment because of their complaints of sex discrimination.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. § 1367,

and 42 U.S.C. §2000e-5.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3. At all relevant times, Defendant Atlantic Capes Fisheries, or its predecessor in interest, has continuously been doing business in the Commonwealth of Massachusetts, and has had at least 15 employees.

4. At all relevant times, Defendant Atlantic Capes Fisheries has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5. At all relevant times, Defendant BJ's Service Co., Inc. has continuously been doing business in the Commonwealth of Massachusetts, and has had at least 15 employees.

6. At all relevant times, Defendant BJ's Service Co. has procured for employees opportunities to work for an employer, or has procured employees for an employer, within the meaning of Section 701(c) of Title VII, 42 U.S.C. § 2000e(c).

7. At all relevant times, Defendant BJ's Service Co., Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. At all relevant times, Defendant ACF has been a joint employer of Plaintiffs Margarita Fuentes, Mirna Pacaja, Esdeyra Rosales. Defendant ACF, among other considerations: (1) had the right, and exercised the right, to control when, where, and how Plaintiffs performed their work; (2) set the hours of work and the duration of Plaintiffs' jobs; (3) provided training

necessary to perform Plaintiffs' work; (4) supervised Plaintiffs; (5) furnished Plaintiffs with all of the tools, materials, and equipment necessary to perform the job; (6) established work rules governing Plaintiffs' working conditions; (7) required Plaintiffs to perform their work on premises operated by it; and (8) required Plaintiffs to perform work which was part of its regular business.

9. At all relevant times, BJ's was a joint employer of Plaintiffs and a class of similarly-aggrieved women. Defendant, among other considerations: (1) sought out, interviewed, and hired Plaintiffs for assignment to Defendant ACF; (2) determined when and where Plaintiffs should report to work; (3) determined and paid Plaintiffs' wages; (4) withheld employment and payroll taxes from Plaintiffs' wages; (5) maintained Plaintiffs' personnel files; (6) stated to Plaintiffs that they were employees of Defendant BJ's; (7) employed the individuals who supervised Plaintiffs' work at ACF; and (8) had the right to terminate Plaintiffs' employment or assign them to another job. In addition, since approximately Spring 2017, BJ's has employed employee relations staff at ACF's Fall River facility responsible for receiving requests for sick leave and time off.

## ADMINISTRATIVE PROCEDURES

10. Prior to the institution of this lawsuit, Margarita Fuentes, Mirna Pacaja, and Esdeyra Rosales filed charges with the EEOC ("Commission") alleging violations of Title VII and Chapter 151B by Defendants.

11. On May 24, 2017, the Commission issued Letters of Determination to Defendants notifying them that the Commission found reasonable cause to believe that Defendants discriminated against Fuentes, Pacaja, Rosales, and a class of similarly-aggrieved women on the basis of sex and had retaliated against Pacaja and Rosales. At that time, the Commission invited

Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. The Commission engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

14. On August 3, 2017, the Commission issued to Defendants Notices of Failure of Conciliation advising them that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

16. Defendant ACF operates a seafood processing facility in Fall River, Massachusetts.

17. Since at least 2013, ACF has relied on BJ's to provide it with workers at its facility in Fall River, Massachusetts.

18. Since at least 2013, Defendants have engaged in unlawful employment practices at ACF's facility in Fall River, Massachusetts in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-(a)(1) and M.G.L. c 151B, § 4. These unlawful practices include, but are not limited to, the following:

   a) Defendants have engaged in sex discrimination against Fuentes, Pacaja, Rosales by subjecting them to sexual harassment, and by creating and maintaining a hostile work environment because of their sex, female.

   b) In approximately May 2013, Defendant BJ's hired Rosales and assigned her to work

4

at Defendant ACF's Fall River facility. Rosales, who is a Spanish speaker, was assigned to a production line supervised by another BJ's employee, Fidel Santos ("Santos"), working at the facility. Santos immediately inquired of Rosales about her personal life, stood close behind her on the line, and touched her body, including her back, hips and buttocks. Rosales objected to this conduct. After Rosales rejected Santos's advances, he told her there was no work for her.

c) Uncertain and afraid of losing her new job, Rosales asked another line supervisor for work and was re-assigned to his line. The sex harassment did not end, however. Santos continued to comment licentiously about Rosales's body and solicit her for sex when he would encounter her at work. Rosales continued to be assigned to Santos's line as needed (for example, to cover the breaks of other workers). On one such occasion, in approximately August 2015, Santos approached Rosales from behind and asked her to touch his penis. Rosales refused, and could feel Santos pressing his penis against her backside through his clothes. She felt humiliated.

d) Throughout this period, Rosales repeatedly complained to ACF managers, including Santos's direct supervisor, about this conduct. Rosales told these managers that her line supervisor had said obscene things to her and that she had seen him get physically close to other women in the facility. One manager told Rosales to ignore him. Another told her he would "look into it," but the harassing conduct continued.

e) In approximately June 2013, Defendant BJ's hired Fuentes, a Spanish speaker, and assigned her to work at Defendant ACF's Fall River facility. Fuentes's first supervisor was Santos. On her first day of work, Santos grabbed Fuentes's buttocks. Fuentes immediately pulled away and asked him why he was touching her. Santos

responded, "Here, anything goes." That same day, Fuentes complained to an ACF manager who told her that Santos was "crazy" and that she should just ignore him.

f) The following day, while Fuentes was working on the line, Santos took her hand, pulled it behind her back, and touched his penis with it. Fuentes resisted and told him to stop. Santos responded that she was a "stupid old lady," and that, at ACF, she was expected to do what he told her to do. Fuentes went back to the ACF manager to complain, and he again told her to ignore it. Shortly thereafter, Santos confronted her and asked if she had been complaining about him. When she responded that she had, he warned her that if she continued, he would send her home or change her work assignment. Fuentes told him to change her line. Santos said he would transfer her, but he would keep asking for her back and requesting her to cover breaks on the line. Fuentes felt she could not escape him.

g) Although Fuentes transferred off Santos's line, he continued to harass her throughout her time working at the ACF facility in Fall River, calling her "stupid," "good for nothing," questioning why she would not submit sexually to him, and hypothesizing about her sex life. Fuentes repeatedly complained to the BJ's employee who had hired her about the sex harassment she experienced at ACF, but he told her that she should ignore Santos's conduct, that she had to work, and that he had no other jobs he could give her.

h) Pacaja, a Spanish speaker, was hired by Defendant BJ's in approximately May 2011 and assigned to Defendant ACF's Fall River facility. About four years later, in or around June 2015, Pacaja was assigned to a new line supervisor, Santos. Her first day on his Santos's line, he stood behind her as she was working, and wrapped his arms

around her waist and hips. Santos's conduct continued. While Pacaja worked on his line, he would comment on her genitalia and buttocks, complain that she would not submit sexually to him, repeatedly ask her to touch his penis, and rub his hands along her body, including her waist and the sides of her breasts. On multiple occasions, Santos would force Pacaja to come in contact with his erect penis, including rubbing himself against her buttocks while she was working. Pacaja repeatedly rejected Santos, including rejecting his requests to meet him in a remote area of the facility during her lunch break. When Pacaja would reject him, Santos would tell her she was worthless.

i) Line supervisors, like Santos, and who are employed by BJ's and ACF, have the authority to assign overtime and weekend work and, as such, have the authority to affect the amount of the workers' weekly, take-home pay. Line supervisors direct the workers day-to-day work and inform ACF managers about the number of workers needed each day.

j) Since at least May 2013, other female workers at Defendant ACF's Fall River, Massachusetts facility were subject to similar, unwanted harassment based on sex by male line supervisors and managers. This included unwanted touching (for example, unwanted caressing over their clothes and men pressing their bodies up against the women working on the line), repeated requests for sex and repeated lewd comments. In addition to the complaints to ACF managers and a BJ's supervisor, some of this harassment occurred in plain view of ACF supervisors, but neither Defendant took any action to remedy the harassment.

k) Until early 2016, Defendant ACF had no policy prohibiting sex discrimination

(including sex harassment), nor did it have any practice or protocol for reporting sex harassment to the company. In addition, at all relevant times, ACF did not employ any human resources personnel who could speak or understand Spanish, despite the fact that the majority of workers in the company's Fall River facility are Spanish speakers.

l) During the relevant period, Defendant BJ's adopted a policy prohibiting sexual harassment, but never provided it to Fuentes, Pacaja or Rosales, nor did BJ's ever train these women on the policy or how to report sex harassment.

19. The effect of the practice(s) complained of in paragraph 18, above, has been to deprive Fuentes, Pacaja, Rosales and other, similarly-aggrieved female workers in Defendant ACF's Fall River facility of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

20. Beginning in 2016, Defendants have engaged in unlawful employment practices, in violation of Chapter 151B of the Mass. General Laws and Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a), with respect to Pacaja and Rosales by retaliating against them because they complained of sex harassment and filed charges with the EEOC. These unlawful practices include, but are not limited to, the following:

a) In January 2016, Pacaja and Rosales met with Defendant ACF's human resources manager and, with the assistance of another ACF facility employee who speaks English and Spanish, complained about the sex harassment they had experienced at ACF's Fall River facility.

b) Shortly thereafter, ACF began soliciting complaints from Pacaja and Rosales's co-workers about the women and their work performance and issued a written warning

to Rosales, the first she had received in her time working at ACF.

c) In February 2016, Pacaja and Rosales filed charges of sex discrimination against both Defendants with the Commission.

d) In March 2016, Defendant ACF issued written warnings to both Pacaja and Rosales concerning alleged interpersonal issues with their co-workers.

e) On or about March 30, 2016, ACF and BJ's informed Pacaja and Rosales that they were being terminated effective April 1, 2016.

f) After their terminations, BJ's refused to refer Pacaja or Rosales for suitable successor employment.

g) On or about July 25, 2016, Pacaja and Rosales were reinstated to their positions at ACF. Thereafter, Pacaja and Rosales experienced ongoing harassment from the supervisor they had accused of sex discrimination and from co-workers who referred to them as "the raped women" and "whores." Pacaja and Rosales complained to ACF about this treatment, but no remedial action was taken.

21. The effect of the practice(s) complained of in paragraph 20, above, has been to deprive Pacaja and Rosales of equal employment opportunities and otherwise adversely affect their status as employees because of their opposition to practices made unlawful by Title VII.

22. The unlawful employment practices complained of in paragraphs 18 and 20 above were intentional.

23. The unlawful employment practices complained of in paragraphs 18 and 20 were done with malice or with reckless indifference to the federally protected rights of Fuentes, Pacaja, Rosales and other female workers who worked for Defendants at ACF's Fall River, Massachusetts facility.

## CAUSES OF ACTION

### Count 1 – Violation of Title VII

24. Plaintiffs reallege all of the allegations above, and incorporate them herein.

25. The above actions are sex discrimination and retaliation in violation of Title VII.

### Count 2 – Violation of Chapter 151B

26. Plaintiffs reallege all of the allegations above, and incorporate them herein.

27. The above actions are sex discrimination and retaliation in violation of Chapter 151B of the Massachusetts General Laws.

## PRAYERS FOR RELIEF

Wherefore, the Plaintiffs respectfully requests that this Court:

A. Find the Defendants liable on all Counts.

B. Award compensatory and punitive damages as determined at trial.

C. Enter injunctive relief to prohibit the employer from violating Chapter 151B and Title VII.

D. Award attorney's fees and costs.

E. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

MARGARITA FUENTES, MIRNA PACAJA, AND ESDEYRA ROSALES

By their counsel,

/s/ James A.W. Shaw
James A.W. Shaw, BBO # 670993
SEGAL ROITMAN, LLP
33 Harrison Ave., 7th Floor
Boston, MA 02111
Phone: (617) 603-1432
Fax: (617) 742-2187
jshaw@segalroitman.com

Dated: June 1, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2018, I electronically filed the foregoing by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/James A.W. Shaw
James A.W. Shaw