IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>ATLANTIC CAPES FISHERIES, INC. and,  )<br>BJ'S SERVICE CO., INC.  )<br>)<br>Defendants.  )<br>)  | C.A. NO. 1:17-cv-11860-PBS<br><br>**JURY TRIAL DEMANDED**<br><br>**LEAVE TO FILE GRANTED ON AUGUST 8, 2018** |

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S AMENDED COMPLAINT**

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Margarita Fuentes, Mirna Pacaja, Esdeyra Rosales, and similarly aggrieved female workers who were adversely affected by such practices. As more fully described below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that the Defendants, Atlantic Capes Fisheries, Inc. ("ACF") and BJ's Service Co., Inc. ("BJ's") engaged in sex discrimination against Fuentes, Pacaja, Rosales ("Charging Parties") and other female workers at ACF's facility in Fall River, Massachusetts by subjecting them to sex harassment and by creating, maintaining, and failing to remedy a hostile work environment because of sex, female. In addition, Defendants retaliated against Pacaja and Rosales by subjecting them to continued harassment, termination and failure to refer for work because of their complaints of unlawful sex discrimination.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and continue to be committed within the jurisdiction of the United States District Court for the District of Massachusetts.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Atlantic Capes Fisheries, or its predecessor in interest, has continuously been doing business in the State of Massachusetts, and has had at least 15 employees.

5. At all relevant times, Defendant Atlantic Capes Fisheries has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant BJ's Service Co., Inc. has continuously been doing business in the State of Massachusetts, and has had at least 15 employees.

7. At all relevant times, Defendant BJ's Service Co. has procured for employees opportunities to work for an employer, or has procured employees for an employer, within the meaning of Section 701(c) of Title VII, 42 U.S.C. § 2000e(c).

8. At all relevant times, Defendant BJ's Service Co., Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

9. At all relevant times, Defendant ACF has been a joint employer of Margarita Fuentes, Mirna Pacaja, Esdeyra Rosales, and a class of similarly-aggrieved women.  Defendant ACF, among other considerations: (1) had the right, and exercised the right, to control when, where, and how Charging Parties performed their work; (2) set the hours of work and the duration of Charging Parties' job; (3) provided training necessary to perform Charging Parties' work; (4) supervised Charging Parties; (5) furnished Charging Parties with all of the tools, materials, and equipment necessary to perform the job; (6) established work rules governing Charging Parties' working conditions; (7) required Charging Parties to perform their work on premises operated by it; and (8) required Charging Parties to perform work which was part of its regular business.

10. At all relevant times, BJ's was a joint employer of Charging Parties and a class of similarly-aggrieved women.  Defendant, among other considerations: (1) sought out, interviewed, and hired Charging Parties for assignment to Defendant ACF; (2) determined when and where Charging Parties should report to work; (3) determined and paid Charging Parties' wages; (4) withheld employment and payroll taxes from Charging Parties' wages; (5) maintained Charging Parties' personnel files; (6) stated to Charging Parties that they were employees of Defendant BJ's; (7) employed the individuals who supervised Charging Parties' work at ACF; and (8) had the right to terminate Charging Parties' employment or assign them to another job. In addition, since approximately Spring 2017, BJ's has employed employee relations staff at ACF's Fall River facility responsible for receiving requests for sick leave and time off.

ADMINISTRATIVE PROCEDURES

11. More than thirty days prior to the institution of this lawsuit, Margarita Fuentes, Mirna Pacaja, and Esdeyra Rosales filed charges with the Commission alleging violations of Title VII by Defendants.

12. On May 24, 2017, the Commission issued Letters of Determination to Defendants notifying them that the Commission found reasonable cause to believe that Defendants discriminated against Fuentes, Pacaja, Rosales, and a class of similarly-aggrieved women on the basis of sex and had retaliated against Pacaja and Rosales.  At that time, the Commission invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. The Commission engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

15. On August 3, 2017, the Commission issued to Defendants Notices of Failure of Conciliation advising them that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

17. Defendant ACF operates a seafood processing facility in Fall River, Massachusetts.

18. Since at least 2013, ACF has relied on BJ's to provide it with workers at its facility in Fall River, Massachusetts.

19. Since at least 2013, Defendants have engaged in unlawful employment practices at ACF's facility in Fall River, Massachusetts in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-(a)(1). These unlawful practices include, but are not limited to, the following:

a) Defendants have engaged in sex discrimination against Fuentes, Pacaja, Rosales and a class of other female workers by subjecting them to sexual harassment, and by creating and maintaining a hostile work environment because of their sex, female.

b) In approximately May 2013, Defendant BJ's hired Rosales and assigned her to work at Defendant ACF's Fall River facility. Rosales, who is a Spanish speaker, was assigned to a production line supervised by another BJ's employee, Fidel Santos ("Santos"), working at the facility. Santos immediately inquired of Rosales about her personal life, stood close behind her on the line, and touched her body, including her back, hips and buttocks. Rosales objected to this conduct. After Rosales rejected Santos's advances, he told her there was no work for her.

c) Uncertain and afraid of losing her new job, Rosales asked another line supervisor for work and was re-assigned to his line. The sex harassment did not end, however. Santos continued to comment licentiously about Rosales's body and solicit her for sex when he would encounter her at work. Rosales continued to be assigned to Santos's line as needed (for example, to cover the breaks of other workers). On one such occasion, in approximately August 2015, Santos approached Rosales from behind and asked her to touch his penis. Rosales refused, and could feel Santos pressing his penis against her backside through his clothes. She felt humiliated.

d) Throughout this period, Rosales repeatedly complained to ACF managers, including Santos's direct supervisor, about this conduct. Rosales told these managers that her

line supervisor had said obscene things to her and that she had seen him get physically close to other women in the facility. One manager told Rosales to ignore him. Another told her he would "look into it," but the harassing conduct continued.

e) In approximately June 2013, Defendant BJ's hired Fuentes, a Spanish speaker, and assigned her to work at Defendant ACF's Fall River facility. Fuentes's first supervisor was Santos. On her first day of work, Santos grabbed Fuentes's buttocks. Fuentes immediately pulled away and asked him why he was touching her. Santos responded, "Here, anything goes." That same day, Fuentes complained to an ACF manager who told her that Santos was "crazy" and that she should just ignore him.

f) The following day, while Fuentes was working on the line, Santos took her hand, pulled it behind her back, and touched his penis with it. Fuentes resisted and told him to stop. Santos responded that she was a "stupid old lady," and that, at ACF, she was expected to do what he told her to do. Fuentes went back to the ACF manager to complain, and he again told her to ignore it. Shortly thereafter, Santos confronted her and asked if she had been complaining about him. When she responded that she had, he warned her that if she continued, he would send her home or change her work assignment. Fuentes told him to change her line. Santos said he would transfer her, but he would keep asking for her back and requesting her to cover breaks on the line. Fuentes felt she could not escape him.

g) Although Fuentes transferred off Santos's line, he continued to harass her throughout her time working at the ACF facility in Fall River, calling her "stupid," "good for nothing," questioning why she would not submit sexually to him, and hypothesizing about her sex life. Fuentes repeatedly complained to the BJ's employee who had

hired her about the sex harassment she experienced at ACF, but he told her that she should ignore Santos's conduct, that she had to work, and that he had no other jobs he could give her.

h) Pacaja, a Spanish speaker, was hired by Defendant BJ's in approximately May 2011 and assigned to Defendant ACF's Fall River facility. About four years later, in or around June 2015, Pacaja was assigned to a new line supervisor, Santos. Her first day on his Santos's line, he stood behind her as she was working, and wrapped his arms around her waist and hips. Santos's conduct continued. While Pacaja worked on his line, he would comment on her genitalia and buttocks, complain that she would not submit sexually to him, repeatedly ask her to touch his penis, and rub his hands along her body, including her waist and the sides of her breasts. On multiple occasions, Santos would force Pacaja to come in contact with his erect penis, including rubbing himself against her buttocks while she was working. Pacaja repeatedly rejected Santos, including rejecting his requests to meet him in a remote area of the facility during her lunch break. When Pacaja would reject him, Santos would tell her she was worthless.

i) Line supervisors, like Santos, and who are employed by BJ's and ACF, have the authority to assign overtime and weekend work and, as such, have the authority to affect the amount of the workers' weekly, take-home pay. Line supervisors direct the workers day-to-day work and inform ACF managers about the number of workers needed each day.

j) Since at least May 2013, other female workers at Defendant ACF's Fall River, Massachusetts facility were subject to similar, unwanted harassment based on sex by

male line supervisors, managers and co-workers. This included unwanted touching (for example, unwanted caressing over their clothes and men pressing their bodies up against the women working on the line), repeated requests for sex and/or romantic relationships, and repeated lewd comments. In addition to the complaints to ACF managers and BJ's, some of this harassment occurred in plain view of ACF supervisors, but neither Defendant took any action to remedy the harassment.

k) Until early 2016, Defendant ACF had no policy prohibiting sex discrimination (including sex harassment), nor did it have any practice or protocol for reporting sex harassment to the company. In addition, at all relevant times, ACF did not employ any human resources personnel who could speak or understand Spanish, despite the fact that the majority of workers in the company's Fall River facility are Spanish speakers.

l) During the relevant period, Defendant BJ's adopted a policy prohibiting sexual harassment, but never provided it to Fuentes, Pacaja or Rosales, nor did BJ's ever train these women on the policy or how to report sex harassment.

20. The effect of the practice(s) complained of in paragraph 19, above, has been to deprive Fuentes, Pacaja, Rosales and other, similarly-aggrieved female workers in Defendant ACF's Fall River facility of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

21. Beginning in 2016, Defendants have engaged in unlawful employment practices, in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a), with respect to Pacaja and Rosales by retaliating against them because they complained of sex harassment and filed charges with the EEOC. These unlawful practices include, but are not limited to, the following:

a) In January 2016, Pacaja and Rosales met with Defendant ACF's human resources manager and, with the assistance of another ACF facility employee who speaks English and Spanish, complained about the sex harassment they had experienced at ACF's Fall River facility.

b) Shortly thereafter, ACF began soliciting complaints from Pacaja and Rosales's co-workers about the women and their work performance and issued a written warning to Rosales, the first she had received in her time working at ACF.

c) In February 2016, Pacaja and Rosales filed charges of sex discrimination with the Commission.

d) In March 2016, Defendant ACF issued written warnings to both Pacaja and Rosales concerning alleged interpersonal issues with their co-workers.

e) On or about March 30, 2016, ACF and BJ's informed Pacaja and Rosales that they were being terminated effective April 1, 2016.

f) After their terminations, BJ's refused to refer Pacaja or Rosales for suitable successor employment.

g) On or about July 25, 2016, Pacaja and Rosales were reinstated to their positions at ACF. Thereafter, Pacaja and Rosales experienced ongoing harassment from the supervisor they had accused of sex discrimination and from co-workers who referred to them as "the raped women" and "whores." Pacaja and Rosales complained to ACF about this treatment, but no remedial action was taken.

22. The effect of the practice(s) complained of in paragraph 21, above, has been to deprive Pacaja and Rosales of equal employment opportunities and otherwise adversely affect their status as employees because of their opposition to practices made unlawful by Title VII.

23. The unlawful employment practices complained of in paragraphs 19 and 21 above were intentional.

24. The unlawful employment practices complained of in paragraphs 19 and 21 were done with malice or with reckless indifference to the federally protected rights of Fuentes, Pacaja, Rosales and other female workers who worked for Defendants at ACF's Fall River, Massachusetts facility.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of sex.

B. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that discriminates against any individual in retaliation for asserting her rights under federal employment law or otherwise engaging in protected activity.

C. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and those who oppose employment practices made unlawful by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendants to make whole Fuentes, Pacaja, Rosales and other similarly-aggrieved female workers who have suffered sex discrimination at Defendant ACF's Fall River facility by providing compensation for past and future nonpecuniary losses resulting from the

unlawful practices complained of in paragraphs 19 and 21, above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  E. Order Defendants to pay Fuentes, Pacaja, Rosales and other similarly-aggrieved female workers who have suffered sex discrimination at Defendant ACF's Fall River facility punitive damages for the malicious and reckless conduct described in paragraphs 19 and 21 above, in amounts to be determined at trial.

  F. Order Defendants to make whole Pacaja and Rosales by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 21, above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  G. Order Defendants to pay Pacaja and Rosales punitive damages for the malicious and reckless conduct described in paragraph 21 above, in amounts to be determined at trial.

  H. Grant such further relief as the Court deems necessary and proper in the public interest.

  I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: August 9, 2018
   Boston, Massachusetts

            Respectfully submitted,

            JAMES L. LEE
            Deputy General Counsel

            GWENDOLYN YOUNG REAMS
            Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

ADELA SANTOS
Senior Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3696
adela.santos@eeoc.gov


 /s/ Sara Smolik
SARA SMOLIK (BBO#661341)
Senior Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Boston Area Office
John F. Kennedy Federal Building
Room 475
Boston, MA 02203-0506
(617) 565-3207 (telephone)
(617) 565-3196 (fax)
sara.smolik@eeoc.gov